# In the United States Court of Federal Claims

### FOR PUBLICATION

No. 21-1994C
(Filed: November 6, 2023)

|  |  |
|---|---|
| **ROBERT S. CARLBORG**, | ) |
| *Plaintiff,* | ) |
| **v.** | ) |
| **UNITED STATES**, | ) |
| *Defendant.* | ) |

*John B. Wells*, Law Offices of John B. Wells, Slidell, LA, for plaintiff.

*Stephen J. Smith*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Stephen J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC. *Mary Anderlonis*, Lieutenant Colonel, General Litigation Division, Office of the Judge Advocate General, Department of the Navy, Washington Navy Yard, Washington, DC, Of Counsel.

### OPINION AND ORDER[1]

***BONILLA, Judge.***

Robert S. Carlborg served in the United States Marine Corps (USMC) as a ground supply officer from 1995 through 2015, rising to the rank of Major. Thirteen

---

[1] This case was transferred to the undersigned for adjudication on February 28, 2022, pursuant to Rule 40.1(b) of the Rules of the United States Court of Federal Claims (RCFC). Three days later, the parties filed a joint request to stay proceedings pending further consideration of plaintiff's claims by the Board for Correction of Naval Records (BCNR). As discussed *infra*, the BCNR issued its remand decision on August 31, 2022. Thereafter, between November 1, 2022 and April 16, 2023, this matter was stayed to allow plaintiff to retain new counsel. Briefing on the dispositive cross-motions resolved herein continued through the issuance of this decision. Additional briefing and oral argument are unnecessary.

days shy of reaching retirement eligibility, the USMC involuntarily separated Mr. Carlborg following his admission to charges of conduct unbecoming an officer and a gentleman, as well as adultery, in violation of Articles 133 and 134 of the Uniform Code of Military Justice (UCMJ).   In this action, Mr. Carlborg challenges his administrative separation, arguing he should have been allowed to retire upon reaching twenty years of military service.   Alternatively, Mr. Carlborg asserts the USMC should have either granted his request for voluntary early retirement under the Temporary Early Retirement Authority (TERA) program or formally evaluated him for disability retirement following a diagnosis of post-traumatic stress disorder (PTSD).   Pending before the Court are the parties' dispositive cross-motions.   For the reasons set forth below, Plaintiff's Motion for Judgment on the Administrative Record (ECF 43) is DENIED and Defendant's Cross-Motion for Judgment on the Administrative Record (ECF 44) is GRANTED.

## BACKGROUND

Mr. Carlborg enlisted in the USMC on April 6, 1995, and entered active duty on October 23, 1995.   Using the Enlisted Commissioning Program, Mr. Carlborg commissioned as a Second Lieutenant (O-1) on April 2, 1999, and then served as a ground supply officer in roles with varying degrees of responsibility.   From January 2006 to January 2007, then-Captain (O-3) Carlborg deployed to Iraq in support of Operation Iraqi Freedom.   Following his combat deployment, Mr. Carlborg earned several military awards, including the Navy and Marine Corps Commendation Medal for "exceptionally meritorious service" from March 2007 to July 2008, and the Joint Service Commendation Medal for "exceptionally meritorious service" from July 2011 to July 2013.   In the interim, effective June 1, 2009, Mr. Carlborg was promoted to Major (O-4), the rank in which he served until his administrative separation on October 9, 2015.   At the time of his discharge, then-Major Carlborg was thirteen days shy of reaching twenty-year military retirement eligibility.   At all relevant times, Mr. Carlborg was married and a Marine.

Between January 2010 and June 2014, while serving on active duty as a Marine officer, then-Major Carlborg posted nude and sexually explicit photographs and videos of himself with women other than his spouse on several adult websites. Mr. Carlborg used these websites to solicit extramarital relationships, advertising himself as a Marine (i.e., posing in his camouflage utility uniform).   In May 2014, then-Major Carlborg engaged in an extramarital relationship with a law enforcement officer's spouse.   After discovering and confirming the affair, the law enforcement officer reported Mr. Carlborg's conduct to the Naval Criminal Investigative Service which, in turn, reported the behavior to Mr. Carlborg's chain of command.[2]

---

[2] The law enforcement officer also posted the explicit materials he uncovered to www.cheaters.com, where junior-enlisted Marines in Mr. Carlborg's unit later found them.

On August 21, 2014, Mr. Carlborg's command initiated an administrative investigation, initially focused on the reported extramarital relationship. During this investigation, the command discovered Mr. Carlborg's sexually explicit online presence. On December 9, 2014, Mr. Carlborg's command preferred two charges against Mr. Carlborg for violations of Article 133 (conduct unbecoming an officer and a gentleman) and Article 134 (adultery) of the UCMJ. After the charges were preferred, Mr. Carlborg agreed to accept nonjudicial punishment (NJP) for all charges and their specifications in lieu of court-martial.[3] On February 5, 2015, during a duly convened NJP hearing (i.e., "office hours"), Mr. Carlborg pleaded guilty to both charges and their underlying specifications.[4] After accepting Mr. Carlborg's guilty plea, the Commanding General, Major General (O-8) William D. Beydler, imposed punishment in the form of a punitive letter of reprimand and $7,430.10 in forfeited pay.[5, 6] According to the terms of the NJP Agreement executed by Mr. Carlborg on January 2, 2015,[7] quoted *infra*, the parties agreed the criminal charges would be dismissed with prejudice upon sentencing. The letter of reprimand was issued on February 9, 2015, and Mr. Carlborg forfeited one-half of his pay over the next two months.

Two weeks later, in a February 19, 2015 memorandum reporting the NJP proceedings (NJP Report), Major General Beydler included the following:

> After carefully considering all aspects of this case, including the nature of the misconduct, I have determined that Major Carlborg's conduct constitutes a significant departure from the behavior expected of officers

---

[3] NJP is a form of military justice authorized by Article 15 of the UCMJ not constituting a criminal conviction but often filed in the service record of the affected member. The applicable burden of proof in a USMC NJP proceeding is preponderance of the evidence rather than the beyond a reasonable doubt standard required in a court-martial. *See* 18 U.S.C. § 815. The jurisdictional limits on punishment in this case were:

> (a), Arrest in Quarters for not more than 30 consecutive days; (b), Forfeiture of not more than ½ of 1 month's pay per month for 2 months; (c), Restriction to specified limits, with or without suspension from duty, for not more than 60 consecutive days; and (d), a Punitive Letter of Reprimand.

AR 1048–49. "AR __" is a citation to a Bates numbered page in the administrative record.

[4] During his NJP hearing, Mr. Carlborg offered that untreated PTSD related to his January 2006 to January 2007 deployment to Iraq, marital issues, and alcohol use contributed to his charged misconduct.

[5] The imposed pay forfeiture was attributed to Mr. Carlborg's reduced performance value and the time and effort exhausted by his command in investigating and prosecuting the alleged misconduct.

[6] For clarity, "Commanding General" and "Convening Authority" are used interchangeably throughout this opinion.

[7] The NJP Agreement dated December 30, 2014, was inadvertently dated "January 2, *2014*," by both Mr. Carlborg and his Detailed Military Counsel. *See* AR 3480–82 (emphasis added). It was signed and dated by the Convening Authority on January 12, 2015.

of his experience and grade.  Accordingly, I recommend Major Carlborg be required to show cause for retention at a Board of Inquiry.[8]

AR 88–89.  Responding to the NJP Report on February 25, 2015, Mr. Carlborg noted he was eight months from retirement eligibility and planned to request voluntary early retirement under the TERA program rather than face a BOI.

By memorandum dated March 12, 2015, then-Major Carlborg was served with formal notice of a BOI convening to assess whether he should be retained on active duty based on the following:

   a.  Failure to demonstrate acceptable qualities of leadership required of an officer in the member's grade.

   b.  Failure to properly discharge duties expected of officers of the member's grade and experience.

   c.  Commission of a military or civilian offense which could be punished by confinement of 6 months or more and any other misconduct which would require specific intent for conviction.

   d.  Sexual perversion.

AR 95.  In response, Mr. Carlborg submitted a "Voluntary Retirement Request in lieu of Further Administrative Processing for Cause" under the TERA program.  AR 104–05 (alteration to capitalization).  In his formal request dated March 12, 2015, Mr. Carlborg reiterated: "I admit that I am guilty of all the charges/allegations detailed in [the NJP Report].  I admit that I committed misconduct and that my performance of duty was substandard."[9]  AR 105.

Mr. Carlborg's BOI convened on May 5, 2015.  In a memorandum dated May 11, 2015, the BOI substantiated the underlying misconduct and recommended Mr. Carlborg be separated with an Other Than Honorable characterization of

---

[8] A Board of Inquiry (BOI) is a panel of senior officers convened to assess whether a commissioned officer's substandard performance or misconduct merits separation for cause, the characterization of military service and, in certain cases, retirement grade recommendations.  *See generally* Secretary of the Navy Instruction (SECNAVINST) 1920.6C, encl. (8) (Dec. 15, 2005).  A Show Cause Authority may initiate BOIs on a basis of substandard performance or misconduct, and commanding officers are required to report conduct that may warrant separation to the Show Cause Authority.  SECNAVINST 1920.6C, encls. (8)–(9).  If the BOI recommends separation, the record of proceedings is then forwarded to the Deputy Commandant for Manpower and Reserve Affairs (M&RA) for review and comment before a final determination is made by the Secretary of the Navy regarding the recommended separation and characterization of service.  SECNAVINST 1920.6C, encl. (8), ¶ 13.

[9] Acknowledging his misconduct might affect his retirement grade, Mr. Carlborg nevertheless requested to be voluntarily retired as a Major.

service.[10, 11]  AR 680–81.  On July 13 and 21, 2015, Mr. Carlborg challenged the BOI's findings and recommendations, asserting he qualified for retirement under the TERA program and that his BOI should have been continued during the processing of his March 12, 2015 voluntary retirement request.  Mr. Carlborg also alleged legal errors in his BOI proceedings, asserted his PTSD diagnosis was not properly considered as a mitigating factor, and requested that his service be characterized as Honorable.

On September 8, 2015, the Deputy Commandant (M&RA), Lieutenant General (O-9) Mark A. Brilakis, rejected Mr. Carlborg's legal arguments and recommended that Mr. Carlborg be administratively separated with an Other Than Honorable characterization of his service.[12]  In reviewing the matter, the Assistant Secretary of the Navy (M&RA) directed that Mr. Carlborg be evaluated by a military mental health professional (psychologist or psychiatrist) to assess whether he suffered from PTSD and, if so, whether the disorder contributed to his misconduct.  After reviewing Mr. Carlborg's medical records and interviewing him on September 25, 2015, Division Psychiatrist, Commander (O-5) George L. Cowan, concluded Mr. Carlborg did not present a clinical diagnosis of PTSD, his prior diagnosis of PTSD did not contribute to his misconduct, and Mr. Carlborg remained fit for duty.  On September 29, 2015, the Assistant Secretary of the Navy (M&RA) approved Lieutenant General Brilakis' recommendation.  Mr. Carlborg was administratively separated with an Other Than Honorable characterization of service on October 9, 2015.

A year later, on October 14, 2016, Mr. Carlborg filed a disability claim with the Department of Veteran Affairs (VA) for service-connected PTSD.  On May 8, 2017, the VA determined Mr. Carlborg's condition was service connected and assigned him a seventy percent disability rating, subject to future review examinations.

The next year, on October 8, 2018, Mr. Carlborg petitioned the BCNR for relief.  Specifically, Mr. Carlborg submitted: he was eligible for the Disability Evaluation System (DES) and should have been retired by reason of physical disability; the failure to dismiss his criminal charges with prejudice and their subsequent use in a BOI was arbitrary, capricious, and contrary to law; his request for voluntary early retirement under the TERA program was not properly processed; the BOI failed to properly consider his PTSD diagnosis as a mitigating factor; the USMC failed to remove erroneous information from a fitness report ending on February 5, 2015, consistent with the decision Performance Evaluation Review Board (PERB); and his

---

[10] The BOI alternatively recommended Mr. Carlborg be retired in the grade of First Lieutenant (i.e., highest grade of satisfactory service) if he became retirement eligible while his case remained pending.

[11] Addressing the BOI through counsel, Mr. Carlborg apologized and reiterated his ongoing struggles with PTSD and alcoholism.

[12] The proposed separation code was "GKQ – Involuntary Separation, Approved Recommendation of a Board (Misconduct–serious offense)."  AR 81.

involuntary administrative separation thirteen days shy of reaching retirement eligibility was a clear injustice.[13]  On April 6, 2020, the BCNR recommended certain negative comments and related information be removed from Mr. Carlborg's February 5, 2015 fitness report.  The BCNR otherwise denied relief.[14]  Mr. Carlborg commenced this action on October 8, 2021.

## DISCUSSION

### I.   Legal Standard

Decisions issued by military corrections boards are reviewed under an arbitrary, capricious, unsupported by substantial evidence, or contrary to law standard.  *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998).  Moreover, where, as here, a civilian judge is called upon to evaluate the propriety of a service member's administrative involuntary discharge, military judgment is entitled to great deference.  *Doe v. United States*, 132 F.3d 1430, 1434 (Fed. Cir. 1997) ("When a branch of the armed forces has made a decision concerning who is or who is not fit to serve, that decision is generally entitled to great deference.") (citing *Orloff v. Willoughby*, 345 U.S. 83, 90 (1953); *Maier v. Orr*, 754 F.2d 973, 984 (Fed. Cir. 1985)).  The United States Supreme Court's adage "judges are not given the task of running the Army," *see Orloff*, 345 U.S. at 93, applies with equal force to the USMC.  In other words, this Court's role is limited to confirming that duly authorized military officials adhered to applicable law and implementing regulations and instructions in making and adequately supporting otherwise unreviewable personnel decisions.

### II.   Non-Judicial Punishment Agreement

Mr. Carlborg first alleges the failure to dismiss his criminal charges "with prejudice" in accordance with the express terms of the NJP Agreement amounts to legal error.  More specifically, Mr. Carlborg asserts that his agreement to resolve all court-martial charges through NJP precluded his command from using the charged conduct as the basis to convene a subsequent BOI, resulting in his unlawful administrative separation.  In support of his claim, Mr. Carlborg points the Court to various claim preclusion authorities and the doctrine of res judicata.

In relevant part, the NJP Agreement provides:

---

[13] Mr. Carlborg requested the following relief from the BCNR: disability retirement (seventy percent) for PTSD or, in the alternative, full retirement based upon completion of twenty years of active-duty service; void and expunge his NJP, the BOI, and his administrative separation; and remove the February 5, 2015 fitness report from his Official Military Personnel File.

[14] As noted in *supra* note 1, following a voluntary remand sanctioned by the Court on August 31, 2022, the BCNR denied Mr. Carlborg's request for reconsideration.

> I agree to accept Nonjudicial Punishment held by the Commanding General, II Marine Expeditionary Force, and plead guilty to the charges and specifications as specified [herein] below, provided as follows: (a)[] the Convening Authority agrees to dispose of all charges and specifications which were preferred against me on 9 December 2014, at Nonjudicial Punishment; [and] (b)[] the Convening Authority agrees to withdraw and dismiss, without prejudice, the charges and specifications thereunder to which I enter a plea of guilty, said dismissal to ripen to dismissal, with prejudice, upon imposition of sentencing at Nonjudicial Punishment.

AR 3125. In accordance with the terms of the NJP agreement, immediately upon Mr. Carlborg's February 5, 2015 NJP hearing, where he pled guilty and punishment was imposed, the pending criminal charges were to be dismissed with prejudice. The issue presented in this case is whether the required dismissal was limited to future prosecution under the UCMJ or, as Mr. Carlborg asserts, extended to administrative separation.

> Department of Defense Instruction (DoDI) 1332.30 provides:

> Acquittal or not-guilty findings in military or civilian criminal proceedings, conviction or punishment by civilian or military court, *and military nonjudicial punishment in accordance with Article 15, Uniform Code of Military Justice do not preclude an administrative discharge action.*

DoDI 1332.30, encl. (3), ¶ 6(d) (Nov. 25, 2013) (emphasis added). The Instruction makes clear that resolutions of criminal charges through NJP proceedings under Article 15 "do not preclude an administrative discharge action."[15] *Id.* That the charges were initially preferred against Mr. Carlborg and later resolved through an NJP Agreement is of no moment. *See United States v. Nicely*, 147 Fed. Cl. 727, 746 (2020) (crediting the following BCNR statement: "[W]ithdrawal of charges from a court-martial does not preclude the underlying conduct from forming the basis for later NJP or administrative discharge processing under principles of *res judicata*, which only applied to future judicial action before a court-martial and did preclude administrative punishment before a tribunal."), *aff'd*, 23 F.4th 1364 (Fed. Cir. 2022)

---

[15] Mr. Carlborg's reliance upon *Cooney v. Dalton*, 877 F. Supp. 508 (D. Haw. 1995) is misplaced. *Cooney* predated DoDI 1332.30. In place at the time was Section 3610260 of the Naval Military Personnel Manual which, unlike the above-quoted instruction, expressly prohibited administrative separation based upon acquitted conduct. *Cooney*, 877 F. Supp. at 512. At issue in *Cooney*, moreover, was the commanding officer's interpretation of technical acquittal, not the effect of a voluntary dismissal on later use of charged conduct in administrative proceedings. *See id.* at 512–13.

(per curiam).[16]  Indeed, Mr. Carlborg acknowledged as much in his February 25, 2015 response to the NJP Report: "I respectfully request that I not be required to show cause for retention at a Board of Inquiry . . . ."  AR 91.

Further, as in *Nicely*, Mr. Carlborg received the benefits of the plea bargain he (represented by counsel) struck with the convening authority: in exchange for his guilty plea in a non-judicial forum, Mr. Carlborg avoided a criminal prosecution and the prospect of a federal criminal conviction, dismissal (i.e., the officer equivalent of a dishonorable discharge), and possible confinement.  *See* 147 Fed. Cl. at 746–48. Now separated from the military prior to reaching retirement eligibility, Mr. Carlborg is no longer subject to the UCMJ and cannot be tried by court-martial. *See U.S. ex rel Toth v. Quales*, 350 U.S. 11, 14 (1955) ("It has never been intimated by this Court . . . that Article I military jurisdiction could be extended to civilian ex-soldiers who had severed all relationship with the military and its institutions.").[17] Additionally, the charged conduct is now well outside the applicable five-year statute of limitations, which expired more than four years ago in June 2019.  *See* 10 U.S.C. § 843(b)(1).

In sum, consistent with the NJP Agreement, the convening authority effectively dismissed *with prejudice* the charges preferred against Mr. Carlborg in that he was not–and now cannot be–prosecuted under Articles 134 and 135 of the UCMJ.[18]  The claimed preclusive effect of the derivative use of those charges and Mr. Carlborg's NJP guilty plea did not extend to the convening of a BOI and his resulting administrative discharge.  As such, any claimed error in the formal documentation of the dismissed charges is harmless.  *See, e.g.*, *Nicely*, 147 Fed. Cl. at 746–47.

---

[16] The Court rejects Mr. Carlborg's argument that DoDI 1332.30, encl. (3), ¶ 6(d) does not apply simply because the Instruction cites "[a]cquittal and not-guilty findings" but does not include "dismissal" in the first clause.  No matter the nomenclature, the import of this Instruction remains the same: the ultimate outcome of a criminal prosecution is not determinative of the military's reliance upon the underlying misconduct in subsequent administrative proceedings.  Put simply, if complete exoneration following a military or civilian prosecution does not preclude derivative use of previously charged conduct in a subsequent administrative proceeding, neither does the military's voluntary dismissal of criminal charges in connection with a NJP Agreement in exchange for a service member's guilty plea.

[17] The VA is not a part of the military or otherwise one of its institutions.  *See Kelly v. United States*, 69 F.4th 887, 889 (Fed. Cir. 2023) ("The Department of Defense administers military disability retirement pay, *see* 10 U.S.C. § 1201, and the Department of Veterans Affairs ('VA') administers veteran disability benefits, *see* 38 U.S.C. § 1110.").  Accordingly, even if Mr. Carlborg later qualified for VA benefits, which the record suggests, the Court nevertheless finds he severed all relationship with the military on the date of his separation and is no longer subject to its jurisdiction.

[18] Mr. Carlborg's arguments regarding the implications of "withdrawal" versus "dismissal" and the BCNR's understanding (or application) of the same are unavailing.  Similarly, the Court does not share in Mr. Carlborg's interpretative ambiguities, *nor* are veterans-benefits cases instructive or persuasive to DODI 1332.30's application in this case.

## III.   Disability Evaluation System

Mr. Carlborg next contends he should have been referred into DES after he: presented with "symptoms consistent with . . . PTSD" and other disorders during a January 5, 2015 visit to a military clinic, as documented by First Lieutenant (O-2) Anna L. Oberhofer (Group Surgeon, Family Medicine); and was subsequently diagnosed with PTSD and several other disorders following evaluations by civilian licensed clinical psychologist Alana R. Hollings on January 22 and February 16, 2015.[19, 20]   AR 101, 714.   Most relevant here, during a February 20, 2015 follow-up visit, First Lieutenant Oberhofer included the following note in Mr. Carlborg's medical file: "Not currently considered psychologically fit for duty."   AR 193. Mr. Carlborg asserts these diagnoses and comments required his referral to DES and a possible suspension of any disciplinary and discharge proceedings under SECNAVINST 1850.4E (Apr. 30, 2002) (Department of the Navy Disability Evaluation Manual).   The Court disagrees.

DES is the mechanism for determining a service member's return to duty, separation, or retirement following a disability diagnosis.   Under relevant Department of Defense Instructions, "medical authorities will refer eligible [s]ervice members into the DES who have . . . [o]ne or more medical conditions that may, singularly, collectively, or through combined effect, prevent the Service member from reasonably performing the duties of their office, grade, rank, or rating . . . ." DoDI 1332.18 § 5.2(a)(1) (Nov. 10, 2022) (as amended).   As explained by the Federal Circuit, upon referral:

> A claim for disability is first considered by a Medical Evaluation Board ("MEB"), which reviews the individual's medical records to determine the nature of the disability. Then, if the disability is found to be permanent, the issue of disability retirement is referred to a Physical Evaluation Board ("PEB"), which provides a formal fitness and disability determination. If the PEB finds the service member unfit for duty and permanently disabled, it assigns a disability rating. If the

---

[19] In a memorandum dated January 5, 2015, First Lieutenant Oberhofer noted:

> [Mr. Carlborg] presented to clinic today with concerns that his mental health was deteriorating.  [Mr. Carlborg] is now noted to have symptoms consistent with Major Depressive Disorder, Alcoholism, and PTSD as defined in [American Psychiatric Association: Diagnostic and Statistic Manual of Mental Disorders, Fourth Edition, (DSM-IV-TR), Washington, DC APA Press, 2000].

AR 1498.

[20] In a May 4, 2015 memorandum addressed to Mr. Carlborg's then-civilian defense counsel, Mr. Eric M. Kopka, Dr. Hollings opined that Mr. Carlborg's disorders contributed to his misconduct.  AR 1632, 3058.  In addition to Dr. Hollings' diagnosis from January and February 2015, Mr. Carlborg was diagnosed with PTSD on July 7, July 17, and October 5, 2015.  AR 2484–88.  He was diagnosed with Combat Stress Reaction at least a dozen times between March 12 and June 9, 2015.  AR 2487.

rating is 30% or more, the PEB can recommend disability retirement. If the rating is less than 30%, the PEB can recommend discharge with the service member's having the option to receive a lump-sum disability severance payment.

*Barnick v. United States*, 591 F.3d 1372, 1375 (Fed. Cir. 2010).  In other words, it is the service member's medically diagnosed permanent unfitness for duty–rather than the current presence of a disability–that is determinative.

Reviewing Mr. Carlborg's military and medical records, the BCNR determined Mr. Carlborg was not unfit for continued military service.  In reaching this conclusion, the BCNR highlighted two facts.  First, Mr. Carlborg "was performing well in his duties up until he committed the misconduct," as evidenced by his promotion to Major two years *after* his deployment to Iraq.[21]  AR 7.  Second, in the days leading up to his discharge, Mr. Carlborg was deemed fit for duty by military medical providers, including the Division psychiatrist.  Addressing First Lieutenant Oberhofer's February 20, 2015 note in Mr. Carlborg's medical record, the BCNR posited:

> It was not surprising . . . that [Mr. Carlborg] may have been psychologically unfit on that occasion, as that was the day after he received the NJP report where he learned for the very first time that he might have to show cause for retention and his retirement benefits might be in jeopardy.

AR 1958.  In arriving at this conclusion, the BCNR noted the isolated comment followed a series of entries by First Lieutenant Oberhofer and other medical providers who not only examined Mr. Carlborg and diagnosed him with various disorders before and after February 20, 2015, but uniformly found him fit for duty.  The BCNR also highlighted the comment's temporal nature:

> It was a comment upon his fitness for duty at that moment (i.e., "not *currently* considered . . . fit for duty" (emphasis added), and not indicative that there was some question about [his] medical fitness to continue naval service.[22]

---

[21] Mr. Carlborg cites his January 2006 through January 2007 deployment to Iraq as one of the primary causes for his mental health issues, including PTSD.  *See, e.g.*, AR 2855 ("I have some severe, and as so far, untreated PTS[D] upon my return from Iraq in '07.  And I committed these misconducts as a coping mechanism along with my drinking.").

[22] Mr. Carlborg's reliance upon the VA's May 8, 2017 disability rating is misplaced.  Put simply, the evaluation standards are materially different and used for different purposes.  *See Keltner v. United States*, 165 Fed. Cl. 484, 492 (2023) ("[T]he VA is authorized to rate any service-connected condition while the military service is only authorized to rate or apply ratings to the conditions which make a service member unfit for continued military service and cause the premature termination of the

*Id.*

Engaging in a harmless error analysis, the BCNR next concluded the overwhelming evidence in Mr. Carlborg's medical records demonstrated his fitness for continued duty, undermining his case for a DES referral and subsequent PEB assessment. By way of example, the BCNR cited a March 17, 2015 representation Mr. Carlborg made to a treating clinician, wherein he stated: "'completing work in a competent and confident manner daily.'" AR 1959 (quoting AR 2720). The BCNR's findings are consistent with applicable Secretary of the Navy Instructions. *See, e.g.*, SECNAVINST 1850.4E, § 3302a ("A service member shall be considered Unfit when the evidence establishes that the member, due to physical disability, is unable to reasonably perform the duties of his/her office, grade, rank, or rating . . . ."); *id.* § 3303c ("If the evidence establishes that the service member adequately performed his or her duties until the time the service member was referred for physical evaluation, the member may be considered Fit even though medical evidence indicates questionable physical ability to perform duty."). Accounting for Mr. Carlborg's diagnoses from 2014 through 2015, the Court's examination of his voluminous medical records substantiates the BCNR's conclusion that Mr. Carlborg was repeatedly found fit for continued military service in his current role and rank.[23] Indeed, but for his admitted misconduct and resulting discharge, Mr. Carlborg would have reached the twenty-year retirement eligibility milestone and beyond if he elected to continue his military service.[24]

Mr. Carlborg also attempts to sidestep a critical DES restriction: disciplinary and misconduct separation "takes precedence over" any contemporaneous disability separation or referral. *Kelly*, 69 F.4th at 890; *see* SECNAVINST 1850.4E §§ 1002 & 3403. Specifically, Mr. Carlborg argues that he should have been referred to DES on February 20, 2015, because he had not yet been notified of his BOI. But his assertion overlooks the crux of this instruction. Mr. Carlborg could not be referred to DES because his previously charged misconduct could still result in his administrative separation. SECNAVINST 1850.4E § 3403 ("The disability statutes do not preclude

---

member's military career.") (internal brackets omitted); *see also Kelly*, 69 F.4th at 889, 899 ("The existence of a VA rating alone does not mean a service member is entitled to military disability retirement pay. . . . To be clear, VA regulations and VA decisions concerning disability are not binding on matters involving military disability retirement pay.").

[23] *See, e.g.*, AR 1339–40 ("Fit for full duty from psychiatric standpoint.") (Mar. 12, 2015); *id.* at 1326–27 ("Fit for full duty from psychiatric standpoint.") (Apr. 14, 2015); *id.* at 2675 ("Fit for Full Duty.") (May 12, 2015); *id.* at 1346 ("Fit for Full Duty.") (June 9, 2015); *id.* at 1333 ("Fit for full duty.") (July 8, 2015); *id.* at 1634 ("[F]it for full duty.") (July 13, 2015); *id.* at 1330 ("Fit for full duty.") (Aug. 11, 2015); *id.* at 1343 ("FFFD" (a/k/a fit for full duty)) (Sept. 15, 2015); *id.* at 1352–53 ("The patient is psychiatrically fit for full duty.") (Oct. 5, 2015).

[24] Mr. Carlborg was repeatedly diagnosed with a "Phase of Life or Circumstances Problem" between October 8, 2014 and April 22, 2015. *See* AR 2484–88. In the interim, on several occasions between April 9 and May 1, 2015, medical providers found "No Psychiatric Diagnosis or Condition." *Id.*

11

disciplinary separation. Such separations as described herein normally supersede disability separation or retirement."). And, even if Mr. Carlborg was referred to DES in February 2015 or thereafter, his medical discharge evaluation would at least have been suspended following the March 12, 2015 "Show Cause" notification. *See id.* In short, Mr. Carlborg was precluded from receiving a disability evaluation because he was ultimately separated for misconduct.[25, 26]

## IV.   Board of Inquiry

Mr. Carlborg alleges the USMC violated applicable regulations in the wake of his BOI proceedings. Specifically, Mr. Carlborg claims the following errors: his request for a twenty-day extension to rebut the BOI report was not forwarded to the Alternate Show Cause Authority in accordance with the Notification of Board of Inquiry memorandum dated March 12, 2015; and the USMC failed to properly conduct his separation medical examination as required under 10 U.S.C. § 1177. These issues are addressed seriatim.

In accordance with the BOI notice and appended Rights of a Respondent, Mr. Carlborg was afforded at least thirty days to prepare his defense. In fact, the BOI convened fifty-four days later, on May 5, 2015, and issued its formal report on May 11, 2015. By operation of SECNAVINST 1920.6C encl. (8), ¶ 12e and Marine Corps Order P5800.16A, Ch. 7, § 4007, ¶ 2h(4) (Feb. 10, 2014), Mr. Carlborg was granted ten days to submit a post-board written response.[27] On June 29, 2015, Mr. Carlborg requested an additional twenty days to submit his post-board response, citing to his need for assistance of counsel and a clinical professional.[28] The next day, the Staff Judge Advocate (SJA)–acting on behalf of the Show Cause Authority (i.e., Commanding General, Lieutenant General (O-9) Robert B. Neller)–granted-in-part and denied-in-part Mr. Carlborg's request for additional time. Specifically, the

---

[25] The Court finds no evidence the BCNR failed to review or evaluate the full and complete administrative record before it, nor does the record indicate Mr. Carlborg's discharge characterization was upgraded or otherwise changed from October 9, 2015, through the litigation of this case. *Cf. Kelly*, 69 F.4th at 899 ("We hold that the Record Correction Board's failure to review or evaluate the effect the upgrade change in [a service member's] record had on his eligibility for military retirement disability pay was arbitrary and capricious."); *see also* AR 1867.

[26] The Court finds no evidence that Mr. Carlborg's PTSD was not liberally considered by the BCNR in accordance with the National Defense Authorization Act, 2018, Pub. L. 115-91, Title V § 520 ("Consideration of additional medical evidence by Boards for the Correction of Military Records and liberal consideration of evidence relating to post-traumatic stress disorder or traumatic brain injury.") (Dec. 12, 2017).

[27] The ten-day clock started after the record of proceedings was completed, including the publication of the BOI transcript.

[28] Mr. Carlborg acknowledged receipt of the BOI report both in his June 30, 2015 request for an extension, and in his July 13, 2015 response. As a separate basis for requesting the extension, Mr. Carlborg asserts that he requested the additional twenty days because "his assigned military counsel was in the process of a [Permanent Change of Station] move." AR 1031.

SJA extended Mr. Carlborg's post-board submission deadline by an additional ten days, until July 14, 2015.  Mr. Carlborg timely submitted his BOI response on July 13, 2015, and, thereafter, submitted additional materials on July 21, 2015. AR 1623–25.

As an initial matter, Mr. Carlborg was not entitled to the requested extension of time.  *See* SECNAVINST 1920.6C encl. (8), ¶ 12e ("The counsel for respondent (or respondent, if no counsel was elected) shall be provided a copy of the record of proceedings and shall be provided an opportunity to submit written comments to [the Chief of Naval Personnel (CHNAVPERS)] or [Deputy Commandant (DC)] (M&RA) within 10 days of service."); *see also* Marine Corps Order P5800.16A, Ch. 7, § 4007, ¶ 2h(4) ("The respondent's counsel (or respondent, if no counsel was elected) may submit an extension request to the Alternate Show Cause Authority or Show Cause Authority who directed the BOI.  Such requests for extension shall not exceed 20 calendar days.").  Moreover, in granting his request in part (effectively doubling the response deadline) and then affording Mr. Carlborg the opportunity to supplement his initial response, no credible claim of prejudice exists.  Addressing Mr. Carlborg's challenge to the SJA's authority to decide his request for additional time, the BCNR properly concluded the Commanding General, Lieutenant General Neller, was an Alternative Show Cause Authority under the applicable regulation.  *See* Marine Corps Order P5800.16A, Ch. 7, § 4001, ¶ 4 ("Generals and lieutenant generals in command are hereby delegated Show Cause Authority and are hereinafter referred to as Alternative Show Cause Authorities.").  As for the SJA's authority to act upon non-substantive requests for extensions of time, the BCNR sanctioned the "common practice" under the presumption of regularity.  AR 1967; *see Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F. 3d 1324, 1338 (Fed. Cir. 2001) (discussing the "presumption of regularity" enjoyed by government officials).  At most, the SJA's action amounted to harmless error in that Mr. Carlborg ultimately received much more than the requested twenty-day extension to respond to the BOI report.[29] *See* Marine Corps Order P5800.16A, Ch. 7, § 4002, ¶ 2f ("This section does not provide an additional procedural basis of appeal or redress for officers.").

Mr. Carlborg's contentions regarding his medical evaluation prior to separation and the command's consideration of his PTSD are similarly unpersuasive. Shortly before Mr. Carlborg's October 9, 2015 separation, the Assistant Secretary of the Navy (M&RA) directed that he be evaluated by a military-affiliated mental health provider "authorized to conduct PTSD evaluations by 10 U.S.C. § 1177 para. (a)(3)"–

---

[29] Before the BCNR, Mr. Carlborg alleged "Colonel [G. W.] Riggs, the SJA had previously served as the legal advisor to the BOI in violation of [Marine Corps Order P5800.16A, Ch. 7, § 4007, ¶ 2e(2)(a)] . . . should have been disqualified as the SJA providing advice to the General Court Martial Convening Authority."  AR 1031.  Even though Marine Corps Order P5800.16A, Ch. 7, § 4007, ¶ 2e(2)(a) precludes "[an] SJA to the [General Court Martial Convening Authority] in the respondent's chain of command" from serving as a legal advisor, the Court finds no evidence in the record suggesting the SJA was biased or otherwise acted improperly as the legal advisor to Mr. Carlborg's BOI.

i.e., a psychologist or psychiatrist–to assess whether Mr. Carlborg suffered from PTSD and, if so, whether the disorder contributed to his misconduct. AR 742; *see id.* at 693 ("[Assistant Secretary of the Navy] (M&RA) wants a fresh eval from a psychiatrist/psychologist. I've included the ASN (M&RA)'s impression of [Robert Wilson, Psychiatrist,] endorsement, below. If possible, then I'd recommend the [course of action] that you suggested earlier–having the Division Psych do his own independent eval of Carlborg to see (1) whether he actually has PTSD, and (2) whether the PTSD contributed to Carlborg's misconduct.").[30, 31] In accordance with this directive and applicable authorities Division Psychiatrist Commander Cowan reviewed Mr. Carlborg's medical records and interviewed him. In his September 25, 2015 report, Commander Cowan opined Mr. Carlborg did not present a clinical diagnosis of PTSD, his prior diagnosis of PTSD did not contribute to his misconduct, and Mr. Carlborg remained fit for duty.[32] Mr. Carlborg was again found to be "psychiatrically fit for full duty" by Licensed Marriage and Family Therapist Teshia B. Weeks four days before his discharge from the USMC. Accordingly, there is no basis in law or fact to disturb the BCNR's conclusions regarding the propriety of the post-BOI proceedings.

## V. Voluntary Retirement Request

Mr. Carlborg asserts the USMC violated both 10 U.S.C. § 1186(a) and SECNAVINST 1920.6C by failing to forward his March 12, 2015 voluntary retirement request under either the TERA program or a twenty-year retirement to the Secretary of the Navy for consideration. Relying largely upon the closing of his

---

[30] *See* 10 U.S.C. § 1177(a)(3) ("In a case involving post-traumatic stress disorder, the medical examination shall be performed by a clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse. In cases involving traumatic brain injury, the medical examination may be performed by a physician, clinical psychologist, psychiatrist, or other health care professional, as appropriate.").

[31] Since the Assistant Secretary of the Navy (M&RA) explicitly directed (and later considered) the medical examination at issue, at most, the chain of command's consideration (or lack thereof) was harmless. *See* Marine Corps Order P5800.16A, Ch. 7, § 4002, ¶ 2(b)(1) ("The CO, GCMCAs in the chain of command, and the Alternate Show Cause Authority shall review this [medical evaluation] and any post-deployment health assessments for consideration of any medical issues affecting separation.").

[32] Despite email correspondence indicative of a command-wide intent or objective to separate Mr. Carlborg before he reached his twenty-year anniversary in the USMC, the Court finds no evidence in the record suggesting Commander Cowan or any other mental health provider was biased or otherwise acted improperly in rendering a medical opinion in this case. *See, e.g.,* AR 698 ("Again, my concern is that if he were to refuse a voluntary eval it would drag the process past the desired date."); *id.* at 701 ("[P]sychologists don't throw terms like sociopath around loosely."). Nor do Mr. Carlborg's contentions in this regard overcome the "presumption of regularity" enjoyed by government officials. *See Impresa*, 238 F. 3d at 1338.

NJP proceeding in February 2015,[33] and the March 12, 2015 Notification of Board of Inquiry, Mr. Carlborg posits there was no disciplinary action or administrative separation pending when he contemporaneously submitted his March 12, 2015 retirement request. Upon this premise, Mr. Carlborg argues he was improperly denied the right to have his case for retirement forwarded to and considered by the Secretary of the Navy.

Title 10, United States Code, Section 1186 provides in relevant part:

At any time during proceedings under this chapter with respect to the removal of an officer from active duty, the Secretary of the military department concerned may grant a request by the officer--

(1) for voluntary retirement, if the officer is qualified for retirement.

10 U.S.C. § 1186(a); *see also* SECNAVINST 1920.6C, encl. (4), ¶ 12a ("Officers . . . who are being considered for removal from active duty per this instruction and who are eligible for voluntary retirement under any provision of law on the date of such removal, may, upon approval by [Secretary of the Navy], be retired in the highest grade in which they served satisfactorily . . . ."). As noted by the BCNR, "officers pending legal action or proceedings, administrative separation, or disability separation or retirement are not eligible for TERA." *See* MARADMIN 155/14, ¶ 2(H) (Mar. 28, 2014), *cited with approval at* AR 9 ("The Marine Corps set its TERA policy in MARADMIN 155/14 which states officers pending administrative separation are ineligible to retire under TERA."). Mr. Carlborg's current suggestion that his TERA request thread the needle between the conclusion of his NJP proceedings and the commencement of his BOI proceedings is belied by the record and his contemporaneous statements. In the February 19, 2015 NJP Report, Major General Beydler "recommend[ed] Major Carlborg be required to show cause for retention at a Board of Inquiry," AR 89, thereby initiating (at least preliminarily) the BOI process. In fact, in his February 25, 2015 response to the NJP Report, Mr. Carlborg stated: "I respectfully request that I not be required to show cause for retention at a Board of Inquiry and that my early retirement package be approved." AR 91. Further, Mr. Carlborg's March 12, 2015 TERA request is notably titled "Voluntary Retirement Request *In Lieu Of Further Administrative Processing For Cause*." AR 104 (alteration to capitalization; emphasis added).

With regard to Mr. Carlborg's twenty-year retirement request, the BCNR found "no requirement that the Assistant Secretary of the Navy [(M&RA)] review

---

[33] As detailed *supra*, the NJP hearing wherein Mr. Carlborg pleaded guilty and was sentenced took place on February 5, 2015, the letter of reprimand was issued on February 9, 2015, the NJP Report was issued on February 19, 2015, and Mr. Carlborg submitted a response to the NJP Report on February 25, 2015.

[Mr. Carlborg's] retirement request before his BOI" and concluded that "no violations of regulation or statute occurred." AR 9. Engaging in a harmless error analysis, the BCNR primarily weighed two considerations. First, the BCNR found "it was reasonable for the [USMC] to wait for the BOI recommendation since a retirement grade recommendation was required before the Assistant Secretary of the Navy would process the request." *Id.* Next, since the BOI provided Mr. Carlborg an opportunity "to argue for an appropriate retirement grade," the BCNR determined that "he was not prejudiced by the command's decision not to forward his request prior to the BOI." *Id.* To that end, Mr. Carlborg's retirement request was later considered by the Assistant Secretary of the Navy (M&RA). AR 81 ("I hereby deny Major Carlborg's retirement request and recommend that [he] be separated with an Other Than Honorable characterization of service. Your approval below will effect the recommended action."). As such, any claimed error in the formal forwarding of his requests on March 12, 2015, or thereafter, was harmless.

Contrary to Mr. Carlborg's assertions, the USMC did not violate applicable law or regulation. By acknowledging the pending BOI, requesting that his "misconduct case *be* closed" (i.e., future tense), and "voluntarily request[ing] early retirement in lieu of further processing for administrative separation for cause," Mr. Carlborg acknowledged what the record makes clear: at the time Mr. Carlborg submitted the TERA request, he was not eligible for voluntary early retirement.[34] *See id.* (emphasis added). Put simply, the Secretary of the Navy is not required to receive and review retirement requests in cases where a service member fails to meet the basic eligibility TERA requirements. Nor did he complete twenty years of military service prior to his separation. Accordingly, the Court will not disturb the BCNR's conclusion.

## CONCLUSION

For the reasons set forth above, the Court concludes there is no basis in law or in fact to overturn the decisions of the BCNR, remand this matter for additional proceedings or further consideration, or otherwise grant Mr. Carlborg the relief he seeks. To this point, Mr. Carlborg's current claims of unlawful command influence–largely based upon the claims rejected by the Court–cannot be advanced for the first time in this Court.[35] *See Pittman v. United States*, 135 Fed. Cl. 507, 528 (2017) ("Unlawful command influence cannot be raised for the first time in this court."), *aff'd*, 753 F. App'x 904 (Fed. Cir. 2019) (per curiam) (table); *see also N.G. v. United States*, 94 Fed. Cl. 375, 388 (2010) ("Assuming, *arguendo*, that plaintiff has shown

---

[34] Paradoxically, under the same statutory and regulatory scheme, Mr. Carlborg's claimed entitlement to disability retirement consideration would similarly render him ineligible under the TERA program.

[35] Similarly, in Count II of his complaint, Mr. Carlborg also challenged the BCNR's composition. Having failed to address this issue in his motion for judgment on the administrative record, it is waived. *See Ironclad/EEI v. United States*, 78 Fed. Cl. 351, 358 (2007) ("[U]nder the law of this circuit, arguments not presented in a party's principal brief to the court are typically deemed to have been waived.") (later quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

facts constituting [unlawful] command influence, plaintiff failed to adduce them while arguing his case to the military. This is fatal to this position."). The Court considered Mr. Carlborg's remaining allegations–weaved throughout his filings before both the BCNR and this Court–and finds them unpersuasive. Accordingly, Plaintiff's Motion for Judgment on the Administrative Record (ECF 43) is **DENIED** and Defendant's Cross-Motion for Judgment on the Administrative Record (ECF 44) is **GRANTED**. The remaining deadlines included in the Court's April 25, 2023 and October 13, 2023 Orders (ECF 36, 46) are **VACATED**. The Clerk of Court is directed to **ENTER Judgment** accordingly.

It is so **ORDERED**.

Armando O. Bonilla
Judge